IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBERT DIAZ,<br><br>　　　　　Petitioner,<br><br>　　vs.<br><br>BEN CURRY, Warden,<br><br>　　　　　Respondent. | No. C 06-06912 JW (PR)<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

Petitioner, a California inmate currently incarcerated at the Correctional Training Facility in Soledad, in pro se seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the California Board of Prison Terms' ("BPT") April 26, 2005 decision denying him parole. The Court found that the petition, liberally construed, stated cognizable claims and ordered respondent to show cause why the petition should not be granted. Respondent filed an answer, and petitioner filed a traverse.

**BACKGROUND**

In 1983, petitioner was convicted by a jury in the Superior Court of the State of California in and for the County of Ventura of first degree murder. Petitioner was

sentenced to 27 years to life in state prison. On April 26, 2005, the BPT denied parole after petitioner's third parole suitability hearing. Petitioner challenged the BPT's denial of parole in the state superior, appellate, and supreme courts on the grounds that his due process rights were violated. The California Supreme Court summarily denied the petition on September 20, 2006. Petitioner filed the instant federal habeas petition on November 6, 2006.

## DISCUSSION

A.   Standard of Review

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409.

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28. U.S.C. § 2254(e)(1).

Where, as here, the highest state court to consider the petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of petitioner's claim is the opinion of the Ventura County Superior Court. (Resp. Ex. E (In Re Herbert S. Diaz, No. CR18738, February 22, 2006).)

B.   Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's April 26, 2005 decision finding him not suitable for parole. Petitioner has appeared before the BPT three times, including the April 2005 hearing, without being granted parole. Petitioner claims the following as grounds for habeas relief: (1) the BPT's decision violation of petitioner's state liberty interest in parole, an interested protected by his constitutional right to due process; (2) the BPT's decision was not based on a reasonable determination of the facts insofar as the decision was not supported by

sufficient evidence bearing an indicia of reliability; (3) the BPT's decision violates due process because there was not sufficient evidence to indicate that he is a current and present danger to society; and (4) the BPT's reliance on the facts of the commitment offense because the offense did not rise to the level of "egregiousness and callousness."

1. Due Process

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)). See also Irons v. Carey, 505 F.3d 846, 851 (9th Cir.), reh'g and reh'g en banc denied, 506 F.3d 951 (9th Cir. 2007); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006), reh'g and reh'g en banc denied, No. 05-16455 (9th Cir. Feb. 13, 2007); Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003). It matters not that, as is the case here, a parole release date has never been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with 15- to- life sentence implicated prisoner's liberty interest).[1]

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Sass, 461 F.3d at 1128-29 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472

---

[1] The Supreme Court of California's opinion in In re Dannenberg, 34 Cal. 4th 1061 (2005), does not compel a different conclusion. Dannenberg supports, rather than rejects, the existence of a constitutional liberty interest in parole in California. Accord Machado v. Kane, No. C 05-1632 WHA (PR), 2006 WL 449146, at **2-4 (N.D. Cal. Feb. 22, 2006) (rejecting argument that Dannenberg construed section 3041 as no longer creating an expectancy of release).

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.06\Diaz06912_denyHC-parole.wpd        4

U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses nor weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. See id. The court "cannot reweigh the evidence;" it only looks "to see if 'some evidence' supports the BPT's decision." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). Relevant in this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987). In sum, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision." Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (citing McQuillion, 306 F.3d at 904).

Recently, the Ninth Circuit reheard en banc the panel decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir.), reh'g en banc granted, 527 F.3d 797 (9th. Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The panel had concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole and held that because the Governor's reversal of parole was not supported by some evidence, it resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in Hayward. Since the en banc hearing on June 24, 2008, the Ninth Circuit has ordered briefing, inter alia, at to whether the order granting rehearing en banc should be vacated and submission of the matter deferred

pending the California Supreme Court's decisions in <u>In re Lawrence</u>, No. S154018, and <u>In re Shaputis</u>, No. S155872, both of which cases were argued on June 4, 2008. <u>Hayward v. Marshall</u>, No. 06-55392, slip op. at 2 (9th Cir. July 10, 2008).

Unless or until the en banc court overrules the holdings in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>, it is the law in this circuit that 1) California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process, and 2) that the right is satisfied if some evidence supports the Board's parole suitability decision. <u>Sass</u>, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that a prisoner is not currently suitable for parole. <u>Id.</u> at 1129. <u>Biggs</u> and <u>Irons</u> further suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence. <u>See</u> <u>Irons</u>, 505 F.3d at 853-54.

California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct the panel to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole, *e.g.*, the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and

after the crime.  See Cal. Code of Regs., tit. 15, § 2402(c)-(d).[2]

The record shows that on April 26, 2005, petitioner appeared with counsel before a BPT hearing panel for his third parole consideration hearing.  The presiding commissioner explained that in assessing whether petitioner was suitable for parole, the panel would consider factors such as petitioner's commitment offense, his prior criminal and social history, and his behavior and programming since his commitment.  See Hr'g Tr. at 4 (Resp't Ex. D).  The commissioner also explained that petitioner would be given an opportunity to correct or clarify anything in his file, and that petitioner and his counsel would be given the opportunity to make final statements regarding petitioner's parole suitability.  Finally, the commissioner confirmed with petitioner that the panel appeared to be objective, as required.  Id.

After deliberations, the panel concluded that petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Id. at 40.  Specifically, the BPT found that the offense was carried out in a dispassionate and calculated manner.  The panel found that the offense was "as close to an execution-style murder as there is," and that the motive for the crime was inexplicable and very trivial in relation to the offense.  Id. at 40.  Petitioner had a friend lure the victim outside of her home to a street corner where he shot her in the abdomen over a petty dispute involving twenty dollars.  Id. at 10-11.  The panel was also concerned with petitioner's inability to explain why he committed the offense, and found petitioner needed therapy "into the extent to which

---

[2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct.  Cal. Code of Regs., tit. 15, § 2402(c).  The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law.  Cal. Code of Regs., tit. 15, § 2402(d).

the prisoner has explored the commitment offense and comes into terms with the underlying causes." Id. at 43. The presiding commissioner expressed the panel's concern: "Right now, we have no idea why you did what you did. You said that you didn't know why you did what you did, and we can't take a risk of putting you out there and you coming back telling me, well, I did it again because I don't know why I did what I did." Id. Furthermore, the BPT found that petitioner lacked parole plans: petitioner had no legal residence, no viable plans in his last county of legal residence, and no employment plans. Id. at 42. The BPT commended petitioner for remaining relatively free of disciplinary actions and having a favorable psychiatric evaluation. Id. at 43-45. Nonetheless, the panel found that the positive aspects did not outweigh the factors for unsuitability and determined that a two-year denial was necessary for petitioner to make more positive gains. Id. at 44.

In its order denying habeas relief, the superior court determined that the record contained some evidence to support the BPT's finding that petitioner was unsuitable for parole. The court made the following observations:

> In their Decision after the 4/26/05 hearing, the BPT commissioners determined that [petitioner] would pose a threat to public safety if released from prison now because he carried out the murder in "execution-style" manner; and his motive for the killing was inexplicable.
>
> ...
>
> The BPT panel noted that while [petitioner] now acknowledges that he killed Mary Deardorf, they are left with "no clue as to why" he would plan and lure an unarmed woman out of her house into the street and shoot her to death with a .357 Magnum for trivial a reason as her having had "a big mouth."
>
> Citing the incomprehensibility of his killing this woman, the Commissioners determined that public safety requires that [petitioner] come to terms with "the underlying causes" for his crime before he is released into society. The Commissioners noted concern that neither he nor they have any "idea why (he) did what (he) did" Tr. Decision 40/24 and 42/26-43/9).
>
> ...
>
> The BPT Commissioners also cited in their decision to deny parole information in the DA's letter that before the murder

     [petitioner] had an adult criminal history of selling drugs and theft (Hr. Tr. 19/21-27). The Board characterized his record as showing an escalating pattern of criminal conduct and violence (Decision Tr. 42/1).

     Evidence in the record substantiates the Parole Board's further finding that [petitioner] lacks adequate plans to show he would have a place to live, any employment, or support if released on parole to Ventura county (Decision Tr. 42/2).

     The BPT reasonably rejected as insufficient [petitioner's] claim that he could not present any more specific parole plans because he has no family to take him in; and that he tried unsuccessfully to find a job and housing by mailing out 70 letters to Ventura organizations and individuals (with the result that only the Christian Men and Delaney Foundation agreed to interview him after he was released.) (Hrg. Tr. 38/4-18). Given that he had obtained in prison a certificate to work as an optical technician, the Commissioners concluded that [petitioner] should be able to present more in terms of employment prospects upon release that he has done (Hrg. Tr. 3/5; Decision Tr. 42/2-7).

     Contrary to [petitioner's] assertion, the BPT Commissioner's decision reflects that they did not ignore suitability factors that favored his release on parole. The Commissioners recognized [petitioner's] participation in numerous prison classes and a favorable psychological report by Dr. Joe Reed (Hrg. Tr. 28/13-31/4 and Decision 44/21). The Commissioners found, however, that those favorable factors were outweighed by the risk that his release at this time would pose to public safety.

(Resp. Ex. D at 2-6.)

As noted by the superior court, the BPT denied petitioner parole not solely because of the callous nature of his commitment offense but also on the basis of the other factors identified above which lead the panel to conclude that petitioner would pose an unreasonable risk of danger to society if released on parole. Moreover, in light of the present case law, the BPT properly considered the nature of petitioner's commitment offense. See In re Rosenkrantz, 29 Cal. 4th 616, 682-83 ("the [Board] properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant"). Cal. Code of Reg., tit. 15, § 2402(a); see supra at 5. Accordingly, it appears that the BPT's decision finding petitioner unsuitable for parole is supported by "some evidence," and the evidence underlying the Board's decision has some "indicia of reliability." Rosas v. Nielsen, 428 F.3d at 1232. Petitioner's claims 1, 2 and 3 alleging due process violations are therefore DENIED

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.06\Diaz06912_denyHC-parole.wpd      9

1  as without merit.

2  Petitioner's fourth claim that the facts of the commitment offense did not rise
3  to the level of "egregiousness and callousness" is also without merit. The state court
4  made the following observations with respect to the BPT's summary of the facts of
5  the murder:

6  At the 4/26/05 Parole Board hearing, [petitioner], who was represented by counsel, exercised his right not to discuss his crime.
7  He offered no information to dispute the BPT panel's summary of the facts of the murder, stating only that he "stipulate(d)" to the facts
8  recited in the record (Hrg. Tr. 12/17 and 7/23-12/5).

9  [Petitioner] also did not dispute the letter of opposition to his release on parole submitted by Ventura County District Attorney Greg
10  Totten, which was read into the record at the 4/26/05 Board of Prison Terms Hearing (Hrg. Tr. 17/15-22/10). The DA letter portrays the
11  murder as "profoundly senseless and callous" (Hrg. Tr. 21/10).

12  Specifically, the DA's letter pointed out that [petitioner] shot Mary Deardorf over $20 that was missing from one of a number of
13  people, including [petitioner], whom the victim let stay rent-free in her apartment. [Petitioner] told Ms. Deardorf and she was supposed to
14  keep quiet that he was the one who had told her it was Van Deiver who had taken the $20. After telling mutual friends that he was going
15  to shoot Ms. Deardorf because "she had a big mouth," [petitioner] drove home and armed himself with a .357 Magnum. He bragged that
16  he planned to kill Deardorf, wipe his prints off the gun and then plant the gun on Van Deiver. He got Van Deiver to lure her out of her
17  house to street corner near her apartment, for the reason that [petitioner] needed to talk to her alone. [Petitioner] then shot her in the
18  abdomen. She dies on the street. (Hrg. Tr. 17/15-18/15.)

19  The Ventura DA's letter objected to [petitioner's] release from prison on the basis that there is no evidence that [petitioner] has
20  addressed or has any understanding of what caused him to kill the victim (Hrg. Tr. 21/19). As it was entitled to do, the BPT relied on the
21  DA's opposition in reaching its conclusion that this was a "horrendous" crime. The Commissioners cited as evidence for this
22  conclusion the facts that [petitioner] did not do it out of passion or fear; and that he bragged about, planned and carried out an "execution-
23  style murder" of an unarmed woman (BPT Decision 41/7-25 and 40/21/23).

25  (Resp. Ex. D at 3-4.) As the state court points out, petitioner had an opportunity to
26  dispute the facts of the crime, but he chose not to discuss the matter. Based on the
27  undisputed facts of the crime, the state court's denial of petitioner's claim was not
28  based on an unreasonable determination of the facts in light of the evidence

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.06\Diaz06912_denyHC-parole.wpd      10

presented.  28 U.S.C. § 2254(d)(1), (2).  Accordingly, petitioner's claim is DENIED.

This Court concludes that Petitioner's right to due process was not violated by the BPT's decision to deny parole.  The state courts' denial of petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED on the merits.

DATED: March 2, 2009

*James Ware*
JAMES WARE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

HERBERT DIAZ,

        Petitioner,

  v.

B. CURRY, Warden,

        Respondent.

Case Number: CV06-06912 JW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 3/13/2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Herbert Diaz C-86543
Correctional Training Facility
P. O. Box 689
Soledad, Ca 93960

Dated: 3/13/2009

                Richard W. Wieking, Clerk
          /s/ By: Elizabeth Garcia, Deputy Clerk